Argued and submitted May 13, affirmed December 30, 1992

In the Matter of
Melissa Maria Gayton, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF DOUGLAS COUNTY,
*Respondent,*

*v.*

Dawn FROATS,
*Appellant.*

(91JU0028; CA A70156)

844 P2d 917

Sharon L. Hockett, Roseburg, argued the cause and filed the brief for appellant.

Mary H. Williams, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Mother appeals from a juvenile court order, on a dependency petition, finding her infant daughter to be within the court's jurisdiction. On *de novo* review, we affirm.

Child lives with her mother and her mother's boyfriend, Castro. On March 5, 1991, mother took child, who was 2-1/2 years old, to the Douglas Community Hospital emergency room because child had bruises on her abdomen, was suffering from abdominal pain and was vomiting. Dr. Hall, a pediatrician, examined child. He observed that child's abdomen was slightly distended and tender to the touch. He also noticed 7 to 10 dime-sized bruises on child's abdomen, as well as bruises on her pubic bone and the back part of her left hand. Hall questioned mother about the cause of the bruises, and she explained that child had fallen several times in the past week. Hall told mother that child's injuries were not consistent with that explanation.

Hall admitted child to the hospital and ordered a series of tests. The tests revealed an elevated blood count and an extremely elevated liver enzyme level.[1] He ordered that child remain at the hospital for observation.

While under observation, child began experiencing severe abdominal pain. Hall ordered an abdominal ultrasound, which revealed the existence of fluid in her abdomen. Because neither the ultrastenographer nor Hall could determine whether the fluid was blood or something else, child was transferred to Sacred Heart Hospital in Eugene to the care of a pediatric surgeon on March 7. She was released from Sacred Heart on March 13 without requiring surgery.

On March 8, 1991, the Juvenile Department filed a petition for temporary custody of child. The petition alleged that child was within the court's jurisdiction because she had sustained multiple bruises to her abdomen and an injury to her liver while in the custody of mother and Castro.[2] At a

---

[1] Hall explained that a normal liver enzyme level would be "somewhere around forty" and that the child's initial test level was "well over two thousand."

[2] The petition contained these allegations:

"[T]he behavior, condition, and circumstances of said child are such as to endanger the welfare of said child; Said child's parents subjected said child to

hearing conducted that day, the court awarded temporary custody of child to Children's Services Division (CSD) for 30 days. Mother was not represented by counsel at that hearing.

The temporary custody hearing was resumed on March 25, 1991, with mother represented by counsel. At that hearing, Hall testified regarding child's condition during her stay at Douglas Community Hospital. Although he was unable to specify the manner in which the injuries were inflicted, he expressed an opinion that the bruises on child's abdomen could not have been caused by a series of falls and that the injury to her liver was the result of "blunt trauma."[3] At the conclusion of the hearing, the court ordered CSD to continue temporary custody.

The jurisdictional hearing was conducted on May 7, 1991. The court admitted the transcript of Hall's testimony from the previous hearing. It was also established that a registered nurse who aided Hall in treating child and the doctors who treated child at Sacred Heart Hospital agreed with Hall that the injuries were inconsistent with mother's explanation of their cause. The trial court held that the state had proved by a preponderance of the evidence that child was physically abused and ordered that she be committed to the custody of CSD.

In determining whether the juvenile court has properly found jurisdiction over a child, our inquiry is two-fold. First, we consider whether the allegations in the petition, if proved, would sustain a finding of jurisdiction under ORS 419.476(1). *See State ex rel Juv. Dept. v. Randall*, 96 Or App 673, 773 P2d 1348 (1989); *State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 371, 774 P2d 484 (1989); *State ex rel Juv. Dept. v. Moyer*, 42 Or App 655, 660-62, 601 P2d 821 (1979). Then we decide *de novo* whether the state proved them by a preponderance of the evidence. ORS 419.500(1);[4] *State ex rel Juv.*

---

unexplained physical injury; Said parents have failed to provide said child with the care, guidance and protection necessary for the physical, mental and emotional well-being of said child, to wit: Said child has suffered multiple bruises and injury to the liver."

[3] Hall defined "blunt trauma" as an injury that is manifested by skin discoloration and does not cause a tear or laceration in the skin.

[4] ORS 419.500(1) provides, in part:

*Dept. v. Gates, supra; State v. Gardner,* 95 Or App 540, 770 P2d 79 (1989); *State ex rel Juv. Dept. v. Moyer, supra,* 42 Or App at 660-62. Mother apparently concedes that the allegations in the petition, if proved, would establish jurisdiction under ORS 419.476(1). Her argument, therefore, must be construed as an attack on the sufficiency of the evidence to permit a finding of jurisdiction.

ORS 419.476(1)(c) provides, in part:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"'* * * * *

"(c)   Whose behavior, condition, or circumstances are such as to endanger the welfare of the person * * *."

We conclude, on *de novo* review, that jurisdiction was properly found under subsection (c). Hall testified that the injuries sustained by child were inconsistent with mother's explanation. The trial court found Hall to be a credible witness[5] and that finding is afforded considerable weight. *State ex rel Juv. Dept. v. Jones,* 290 Or 799, 810, 626 P2d 882 (1981). In addition, all of the medical personnel involved in treating child agreed that mother's proffered explanation was unsatisfactory. We conclude that the state established by a preponderance of the evidence that child was physically abused.

■      It is not necessary that we determine whether it was mother or Castro who abused child to uphold the trial court's determination of jurisdiction. It has been established that child was physically abused while mother and Castro were living together and that mother and Castro still reside at the same address. It is enough, therefore, that we are convinced that the abuse is attributable to one or both of them. *State ex*

---

"The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in ORS 419.476(1), unless admitted, must be established by a preponderance of the evidence."

[5] After Hall testified, the trial court said:

"Dr. Hall has always struck me as a very candid witness. He's not a person that would get up here and try to sugar coat his diagnosis. He's right up front and what he said is that although he cannot point to a reason [or manner in which the injuries were inflicted], I think he would like to be able to say, well, this is caused by a particular item for us, he can't say that. What he did say is that these [injuries] are inconsistent with the mother's explanation and I agree with that."

*rel Juv. Dept. v. Carver*, 71 Or App 107, 110, 691 P2d 107 (1984); *State ex rel Juv. Dept. v. Jordan*, 36 Or App 817, 820, 585 P2d 753 (1978). ORS 419.476(1) is "concerned only with the conditions and circumstances of the children," *State ex rel Juv. Dept. v. Jordan, supra*, 36 Or App at 820, and we are satisfied that the state proved, by a preponderance of the evidence, circumstances that endanger child's welfare. The juvenile court properly assumed jurisdiction of child.

Affirmed.